**Kirby J. ROBERTS, Appellant,**

v.

**Pete ROSE, d/b/a/ El Segundo Ranch, Appellee.**

No. 04–99–00561–CV.

Court of Appeals of Texas, San Antonio.

Oct. 18, 2000.

Kirby J. Roberts, Junction, for appellant.

Bruce Laird Palmer, Law Office of Laird Palmer, Mason, S. Preston Douglass, Jr., Wallace, Jackson, Machann, Williams & Douglass, P.C., Kerrville, for appellee.

Sitting: HARDBERGER, Chief Justice, RICKOFF, J., and DUNCAN, J. (concurring in the judgment only).

Opinion by: PHIL HARDBERGER, Chief Justice.

Kirby J. Roberts ("Roberts") appeals the order of sanctions against him for failing to appear at a court ordered mediation with his client, A.D. Murr ("Murr"). We affirm the trial court's judgment and deny the Motion For Damages For Frivolous Appeal.

### PROCEDURAL HISTORY

Murr originally brought suit against Pete Rose d/b/a El Segundo Ranch ("Rose") for an alleged unpaid debt, and was countersued by Rose. As part of Roberts's representation of Murr, Roberts had Murr sign a Motion for Nonsuit dismissing Murr's claim. Murr testified, however, he understood that such dismissals were done

"routinely" and that the case would be refiled. Murr further testified that he did not realize that he had waived all of his claims against Rose by signing the document. Murr was, therefore, quite surprised when the case proceeded to trial and the only one being sued was him. On cross-examination, Murr did admit that while he did not fully understand the ramifications of a nonsuit, he was under the impression that it might have some strategic value to his case to wait and refile.

On January 21, 1999, the court ordered Murr and Rose to participate in mediation. When asked on direct examination, Murr denied ever having seen the Order of Referral to Mediation. He also denied that his attorney, Roberts, ever called him to tell him the time, date, or place of the mediation, or even that he had been ordered to participate in mediation. Murr acknowledged a conversation regarding the topic of mediation between himself and Roberts saying, "[Roberts] just said it was a mediation and that he had a conflict of interests [sic], that he had another trial, and that he would take care of it." According to Murr, this conversation took place *after* March 17, 1999, the scheduled date of the mediation, and mediation "was never mentioned again."

Upon discovering a conflict with the mediation time, Roberts faxed a letter to the mediator advising him of the conflict. Roberts made no further inquiries regarding a possible time for rescheduling the mediation, or even to ensure that the mediation had been postponed. As previously mentioned, Roberts failed to advise his client fully of the mediation situation. Furthermore, according to testimony given by Murr on direct examination, the first time Murr became aware that he had been sanctioned by the court was after he sought the services of new legal counsel.

Originally, the trial court sanctioned both Murr and Roberts, ordering them to jointly pay the Plaintiff, Rose, a total of $1,250.00 for failure to appear at mediation, failure to notify the parties of their intent not to attend mediation or to confirm the possible scheduling conflict, and for Murr's failure to attend the Hearing For Sanctions. After hearing testimony during post-trial motions, however, the trial court modified the sanctions, requiring Roberts to pay the full $1,250.00 originally assessed against both himself and Murr. In addition, Roberts was ordered to reimburse Murr for $945.00 in attorney's fees. All sanctions against Murr were rescinded and cancelled.

## STANDARD OF REVIEW

A trial court's imposition of sanctions is reviewed under an abuse of discretion standard. *In re Max Bennett,* 960 S.W.2d 35, 40 (Tex.1997); *Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 853 (Tex. 1992). "A trial court abuses its discretion when it acts without reference to any guiding rules or principles." *Johnson v.. Fourth Court of Appeals,* 700 S.W.2d 916, 918 (Tex.1985). Courts possess inherent powers to discipline attorney behavior through the imposition of sanctions *sua sponte* in appropriate cases. *Lawrence v. Kohl,* 853 S.W.2d 697, 700 (Tex.App.—Houston [1st Dist.] 1993, no writ). Even in the absence of an applicable rule or statute, courts have the authority to sanction parties for bad faith abuses if it finds that to do so will "aid in the exercise of its jurisdiction, in the administration of justice, and the preservation of its independence and integrity." *In re Max Bennett,* 960 S.W.2d at 40 (citing *Eichelberger v. Eichelberger,* 582 S.W.2d 395, 398–99 (Tex. 1979)).

Whether an imposition of sanctions is just is measured by two standards: (1) "a direct relationship must exist between the offensive conduct and the sanction imposed," and (2) "[t]he trial court must at least attempt to *determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both.*" *Wetherholt v. Mercado Mexico Cafe,* 844 S.W.2d 806, 808 (Tex.App.—Eastland 1992, no writ) (emphasis in origi-

nal). Because these two standards can be difficult to apply at times, other courts have restated the standard to simply require that the sanctions be just. *Trans-American Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex.1991); *Luxenberg v. Marshall*, 835 S.W.2d 136, 141 (Tex.App.—Dallas 1992, no writ). In addition to directly relating the offensive conduct and the abuse, the sanction cannot be excessive. *Luxenberg*, 835 S.W.2d at 141. It should be no more than is necessary to satisfy its legitimate purposes. *Id.* Some courts have suggested that trial courts must consider the mildest sanctions that would still promote compliance with the rules. *Luxenberg*, 835 S.W.2d at 141.

■ The legitimate purpose of discovery sanctions has been determined to be threefold: "(1) to secure compliance with discovery rules; (2) to deter other litigants from similar misconduct; and (3) to punish violators." *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex.1992) (citing *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex.1986)). Permissible sanctions should, therefore, be no more severe than are required to satisfy these legitimate purposes, and a court must first consider whether lesser sanctions would fully accomplish compliance, deterrence, and punishment to discourage further abuse. *TransAmerican Natural Gas Corp.*, 811 S.W.2d at 917; *Braden v. Downey*, 811 S.W.2d 922, 929 (Tex.1991 orig. proceeding).

### DISCUSSION

### A. BAD FAITH

■ The appellants argue that the trial court erred in granting sanctions against both Murr and Roberts in that there was neither an allegation nor a finding of bad faith on their parts. Murr and Roberts, were not sanctioned, however, for failure to mediate in good faith. They were sanctioned for failing to appear. Moreover, in *Decker v. Lindsay*, 824 S.W.2d 247, 250 (Tex.App.—Houston [1st Dist] 1992, no writ), the court determined that while parties cannot be forced to peaceably resolve their disputes through alternative dispute resolution procedures, a trial court can compel the parties to sit down with each other. *See also Gleason v. Lawson*, 850 S.W.2d 714, 717 (Tex.App.—Corpus Christi 1993, no writ) (recognizing a trial court's authority to sanction a party for failure to attend a court-ordered settlement conference).

■ One of the principle distinctions a trial court is required to make when imposing sanctions is the relative fault of the parties. *Wetherholt v. Mercado Mexico Cafe*, 844 S.W.2d 806, 808 (Tex.App.—Eastland 1992, no writ). In Murr's case, the trial court determined that the attorney, Roberts, was chiefly to blame for both Murr's having missed the mediation and the following hearing. It was Roberts's failure to keep in regular contact with his client that led directly to both of these events. Murr's new counsel, S. Preston Douglass, Jr. ("Douglass"), emphasized that Murr was not at fault through Murr's testimony that Murr has never failed to appear promptly when Douglass has requested his presence for a meeting or a hearing. Murr replied that whenever Douglass has informed him of a meeting, hearing, or other event requiring his participation, he has done everything asked of him, and would have shown up at the hearing and mediation at issue had he been informed of them by Roberts. This evidence reflected that Murr was willing and eager to participate in his own case, if given the opportunity.

■ The only evidence of bad faith is not in Murr's failure to appear at the mediation or at the subsequent sanctions hearing, but in Roberts's deliberate acts of bad faith throughout his representation of Murr. Roberts's habitual failure to keep his client informed during the litigation, ultimately amounting to a missed mediation session resulting in sanctions against Murr, indicates bad faith on the part of Roberts, rather than Murr. Because the

individual most responsible for the infraction is to be sanctioned, the trial court's ruling which only assessed sanctions against Roberts, was not an abuse of discretion and should be affirmed according to the first prong. *Wetherholt,* 844 S.W.2d at 808. Similarly, the second prong which mandates that the sanction be fair in light of the harm done and conducive to effectuating the tripartite goals of discovery is also met. The sanctions are not outrageously punitive, and will hopefully prevent Roberts and other attorneys like him from abusing their positions and their clients' trust. Consequently, under the second prong of the sanctions test, we affirm the trial court's ruling and find no abuse of discretion. *Luxenberg,* 835 S.W.2d at 141.

**B. MOTION FOR DAMAGES FOR FRIVO-LOUS APPEAL**

The text of Rule 52.11 states that:

On motion of any party or on its own initiative, the court may—after notice and a reasonable opportunity to respond—impose just sanctions on an attorney who is not acting in good faith as indicated by any of the following:

> (a) filing a petition that is clearly groundless;
> (b) bringing the petition solely for the delay of an underlying proceeding;
> (c) grossly misstating or omitting an obviously important or material fact in the petition or response; or
> (d) filing an appendix or record that is clearly misleading because of the omission of obviously important and material evidence or documents.

TEX.R.APP.P. 52.11. The rule governing damages for frivolous appeals in civil cases is as follows:

If the court of appeals determines that an appeal is frivolous, it may—on motion of any party or on its own initiative, after notice and a reasonable opportunity for response—award each prevailing party just damages. In determining whether to award damages, the court must not consider any matter that does not appear in the record, briefs, or other papers filed in the court of appeals.

TEX.R.APP.P. 45.

 The Appellee in this case has filed a Motion For Damages For Frivolous Appeal. After reviewing the record, there is no evidence of Appellants having violated any of the requirements under Rule 52.11. While an abuse of discretion standard is a heavy burden for the Appellants, this does not mean that their appeal is so groundless as to merit sanctions. Sometimes a judge does abuse his or her discretion. It did not happen in this case, but Appellant was within his right to request the trial court's action be reviewed. There is no indication of an attempt to delay, confuse, or mislead the court with this filing. Appellee's motion is denied.

**CONCLUSION**

Roberts was the principle cause of the sanctions against his client, Murr. The trial court's order that Roberts pay Murr's portion of the sanctions was appropriate with the conduct Roberts exhibited, we affirm the trial court's ruling, finding no abuse of discretion. *Wetherholt v. Mercado Mexico Cafe,* 844 S.W.2d 806, 808 (Tex.App.—Eastland 1992, no writ). The Appellant's have not met the criteria of Rule 52.11 of the Texas Rules of Appellate Procedure. Appellee's Motion For Damages For Frivolous Appeal is denied.