Affirmed as Modified and Majority and Dissenting Opinions filed August
30, 2005









Affirmed as Modified and
Majority and Dissenting Opinions filed August 30, 2005.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00970-CV

____________

 

IN THE INTEREST OF K.A.R.

______________________________________________________________________

 

On Appeal from the County Court at Law No. 2

Galveston County, Texas

Trial Court Cause No. 02FD1637

______________________________________________________________________

 

D I S S E N T I N G   O P I N I O
N








On April 27, 2003, Lynne Clarke=s client,
Kenneth Richardson, committed suicide. 
In the months preceding his death, Kenneth was involved in an extremely
distressing experienceClitigation
over the custody of his minor child, K.A.R. 
Although the record indicates that Kenneth=s state
of mind during the pretrial proceedings was at best fragile, the trial court
entered an order sanctioning Clarke and Kenneth, concluding that A[u]nilaterally
canceling the court-ordered mediation without adequate notice@
constituted a Abad faith litigation practice[],@[1] and
holding them jointly and severally liable for the sanctions imposed. 








It is
well established under Texas law that a trial court has the inherent power to
impose sanctions in an appropriate case. 
See, e.g., In re Bennett, 960 S.W.2d 35, 40 (Tex. 1997) (AA court has the inherent power to
impose sanctions on its own motion in an appropriate case.@); Kings Park Apartments, Ltd. v.
Nat=l Union Fire Ins. Co. of Pittsburgh, 101 S.W.3d 525, 541 (Tex. App.CHouston [1st Dist.] 2003, pet.
denied)(recognizing the court=s inherent power to sanction); Kennedy v. Kennedy, 125
S.W.3d 14, 19 (Tex. App.CAustin 2002, pet. denied) (same); In re N.R.C., 94
S.W.3d 799, 808 (Tex. App.CHouston [14th Dist.] 2002, pet. denied) (same); Kutch v.
Del Mar College, 831 S.W.2d 506, 509B10 (Tex. App.CCorpus Christi 1992, no writ) (same);
see also Chambers v. NASCO, Inc., 501 U.S. 32, 63 (1991)
(recognizing inherent power of court to sanction bad faith litigation
practices, even in the face of a statute or a rule); Eichelberger v.
Eichelberger, 582 S.W.2d 395, 398B99 (Tex. 1979) (noting the court=s inherent power Aexists to enable our courts to
effectively perform their judicial functions and to protect their dignity,
independence and integrity@).  Courts, however, also
recognize there are established limits to the trial court=s inherent power to sanction.  The power should be used sparingly, and the
sanctions must be just and appropriate.  See
Shook v. Gilmore & Tatge Mfg. Co., 851 S.W.2d 887, 891B92 (Tex. App.CWaco 1993, writ denied); Kutch,
831 S.W.2d at 510.  In this case, the
majority=s analysis fails to recognize the
limitations of the trial court=s inherent power to sanction and suggests that a violation of
a court order is, per se, a bad faith litigation practice.[2] 
Because there is no evidence in the record that Clarke engaged in any
bad faith litigation practices during the course of this suit which
significantly interfered with the trial court=s
exercise of its core functions, I respectfully dissent from the majority=s
affirmance of the sanctions order against Clarke. 

A.        The
Court=s AInherent
Power to Sanction@

A court=s
inherent powers are those which it may call upon to aid in the exercise of its
jurisdiction, in the administration of justice, and in the preservation of its
independence and integrity.  Eichelberger,
582 S.W.2d at 398.  In Kutch, the
Corpus Christi appellate court expounded upon this power, stating as follows:

Texas Courts have the inherent power to sanction for abuse of the
judicial process which may not be covered by rule or statute.  This power includes the power to sanction
appropriately for failure to comply with a valid court order incident to one of
the core functions of the judiciary.








831
S.W.2d at 510.  Relying on an opinion
from the Court of Criminal Appeals, the Kutch court identified the
following as Acore functions of the judiciary@:  hearing evidence, deciding issues of fact
raised by the pleadings, deciding questions of law, entering final judgment and
enforcing that judgment.  Id.
(citing Armadillo Bail Bonds v. State, 802 S.W.2d 237, 239B40 (Tex.
Crim. App.1990)).  Recognizing the
inherent power to sanction is necessarily limited, the Kutch court
concluded that the power exists only to the extent necessary to Adeter,
alleviate, and counteract bad faith abuse of the judicial process, such as any
significant interference with the traditional core functions of Texas courts.@  Id.; N.R.C., 94 S.W.3d at 810
n.7 (noting the inherent power to sanction exists Aonly@ to the
extent necessary to deter, alleviate and counteract bad faith litigation
practices); Toles v. Toles, 45 S.W.3d 252, 266B67 (Tex.
App.CDallas
2001, pet. denied).  Also acknowledging
the Aamorphous
nature@ of the
power and its potency, the court stated it should be used sparingly.  Kutch, 831 S.W.2d at 510.  Consequently, courts have determined that
there must be some evidence in the record that the conduct complained of
significantly interfered with the court=s
exercise of one of its core functions to uphold a sanction imposed under this
inherent power.  Kennedy, 125
S.W.3d at 19; McWhorter v. Sheller, 993 S.W.2d 781, 789 (Tex. App.CHouston
[14th Dist.] 1999, pet. denied); Kutch, 831 S.W.2d at 510.[3]

1.      Standard
of review 

We review a trial court=s order
imposing sanctions under an abuse of discretion standard.  Phillips & Akers, P.C. v. Cornwell,
927 S.W.2d 276, 279 (Tex. App.CHouston
[1st Dist.] 1996, no writ); see 
TransAmerican Natural Gas Corp. v. Powell, 811 S.W.2d 913, 917 (Tex.
1991).  A failure by the trial court to
analyze or apply the law correctly will constitute an abuse of discretion.  Walker v. Packer, 827 S.W.2d 833, 840
(Tex. 1992).  








The findings of fact made
by a trial court to support its sanction order are not to be treated on appeal
as findings made under Texas Rule of Civil Procedure 296, which are reviewed
for legal and factual sufficiency.  Mills
v. Ghilain, 68 S.W.3d 141, 145 (Tex. App.CCorpus
Christi 2001, no pet.) (citing IKB Indus. (Nigeria) Ltd. V. Pro-Line Corp.,
938 S.W.2d 440, 442 (Tex. 1997)); see also Chrysler Corp. v. Blackmon,
841 S.W.2d 844, 852 (Tex. 1992) (concluding in death penalty sanctions case
that findings are helpful, but such findings must be tied to the appropriate
legal standard and supported by the record). 
Rather, findings filed by the trial court following an imposition of sanctions
are utilized only to assist us in deciding whether the trial court abused its
discretion.  Mills, 68 S.W.3d at
145.  We review the entire record in
making our determination.  Id.

In this case, the trial
court abused its discretion by sanctioning Clarke because there is no evidence
in the record that by failing to attend the mediation, Clarke engaged in bad
faith litigation practices nor evidence that this conduct significantly
interfered in any way with the court=s
exercise of its core functions.[4]  See, e.g., Chrysler Corp., 841
S.W.2d at 852B53 (concluding there was no
evidence to support death penalty sanction); Kennedy, 125 S.W.3d at 19
(concluding there was no evidence in the record to support the court=s
sanctions order);  Kings Park, 101
S.W.3d at 541 (stating the court=s
sanctions must be supported by some evidence of significant interference with
core functions); see also N.R.C., 94 S.W.3d at 810 n.7 (concluding that
failure to pay ad litem fee was not sufficient bad faith abuse of the judicial
process to justify the sanction).  For
this reason, sanctions against Clarke are improper and the court=s order
imposing them should be reversed.

2.      Failure
to attend the mediation








As noted, the trial court
concluded that by A[u]nilaterally
canceling the court-ordered mediation without adequate notice,@ Clarke
engaged in bad faith litigation practices. 
The evidence in the record regarding the mediation reflects the parties
had scheduled it for Monday, March 31, 2003. 
In Clarke=s
affidavit attached to her motion for new trial, she averred that on March 24,
2003, Edwin J. Terry, Kenneth=s ex-wife=s
attorney, telephoned her and stated that although he had learned Kenneth was
considering non-suiting his case, Terry=s client,
Lisa, still wanted to mediate.  Clarke
replied that she had not been in touch with Kenneth, but would contact
him.  On March 28, Lisa filed her
counter-petition to modify, requesting Kenneth=s access
to and possession of K.A.R. be conditioned upon Kenneth=s
continued participation in family counseling. 
Prior to March 28, Clarke=s
attempts to contact Kenneth had been unsuccessful, but she spoke with him on
that date and during their conversation Kenneth told Clarke he was reluctant to
attend the mediation.  Clarke=s
affidavit states she explained the importance of attending the mediation to
Kenneth and the two agreed to speak about the matter again over the
weekend.  She also advised Kenneth not to
nonsuit his case, and discussed Lisa=s
counter-petition with him.  

Two days later, on Sunday,
March 30, when Clarke again spoke with Kenneth, he adamantly refused to attend
the mediation.  Clarke attempted to
notify Terry of Kenneth=s refusal
to attend by faxing a letter to his office and, as noted by the majority, Terry=s legal
assistant received the faxed letter at 12:04 p.m. that afternoon.  The letter also advised Terry that Kenneth
was non-suiting his petition.  In
addition to contacting Terry, Clarke left messages with the mediator and
McCumber, K.A.R.=s ad
litem, stating that she and Kenneth would not be attending the mediation.  








From this evidence, the
majority concludes that Aunder the
applicable standard of review,@ it is
legally sufficient evidence to Asupport
the trial court=s
determination that Kenneth and Clarke unilaterally canceled and failed to
attend a court-ordered mediation without adequate notice.@[5]  But here, the trial court merely stated
conclusorily that the various actions constituted bad faith litigation practices
and Kenneth and Clarke were responsible for those actions.  In its review, the majority affirms the trial
court=s order
merely relying on the fact that Clarke did not appear at the mediation as
ordered and, as stated by the majority, failing to offer any explanation or
excuse for her failure to attend Anotwithstanding
her client=s refusal to do so.@  Under the majority=s
analysis, the fact an attorney failed to attend a mediation is the extent of
the Aevidence@
necessary to support a sanctions order.  

The record evidence
reflects, however, that as soon as Clarke was aware of Kenneth=s
unequivocal refusal to attend, she attempted to notify those involved with the
mediation.  Although she was unable to
directly contact each party, that fact is nothing more than a timing issueCshe
learned of Kenneth=s refusal
to attend on a Sunday.  And, Terry did in
fact receive notice that Clarke and Kenneth would not be attending the
mediation.  This conduct can hardly be
said to constitute evidence of bad faith litigation practices.  Further, Clarke=s
affidavit reflects that she advised Kenneth on the importance of attending the
mediation, but he refused to attend nonetheless.  An attorney can do nothing more in such a
situation except withdraw from the representation.  Clarke filed her motion to withdraw on
Tuesday, April 1, the day after the scheduled mediation.








The majority attempts to
strengthen its analysis by discussing Clarke=s failure
to attend the mediation as if it were a subversion of the judicial process,
describing the conduct as a Ausurpation@of the
trial court=s role.  Regardless of the majority=s
overstatement, the fact remains the conduct sanctioned was Kenneth=s and
Clarke=s failure
to attend the mediation, and there is no evidence that this failure
significantly interfered with the trial court=s core
functions.   Indeed, the trial in this
case was set to begin only a few days after the scheduled mediation and,
typically, a trial is set on the court=s docket
months before the scheduled mediation; therefore, it is doubtful that missing
the mediation could have significantly interfered with the trial court=s
functions.  Moreover, the record is
devoid of any changes to the trial court=s docket
necessitated by the failure to attend the mediation. Without some evidence of how
the complained of conduct interfered with the court=s
exercise of its core functions, a reviewing court is forced to speculate as to
the basis for the court=s
decision to impose sanctions.[6]  See Toles, 45 S.W.3d at 267.  And, although sanctions may be levied in part
because of the disobedience of a court order, without evidence that the
disobedience significantly interfered with the trial court=s core
functions, we should reverse sanctions imposed under the trial court=s
inherent power.  See id.[7]








Further, the majority=s
characterization of this dissent as condoning the Ausurpation
of the court=s role and the failure to comply
with the court=s order@ is
simply unfounded.  The need for attorneys
to comply with valid court orders cannot be questioned.  Nonetheless, the law also requires restraints
in the use of the trial court=s
inherent power to sanction.  Namely, that
a trial court=s sanctions order imposed under
its inherent power must be supported by some evidence of significant
interference with its core functions.  See
Kings Park, 101 S.W.3d at 541.  To
conclude that there is no evidence that Clarke=s
violation of the mediation order significantly interfered with the trial court=s
exercise of a core function is not an endorsement of Clarke=s
violation of the mediation order; rather it is a recognition of the limits that
Texas law sets on the use of the inherent power to sanction.  See Onstad v. Wright, 54 S.W.3d 799,
809B10 (Tex.
App.CTexarkana
2001, pet. denied) (AA
sanction for failure to obey a court order must always be appropriate to the
circumstances of the case.@). 

The inherent power to sanction is also limited by the
fact the sanctions must be just and appropriate.  Shook, 851 S.W.2d at 892; Kutch,
831 S.W.2d at 510.  The Ajust and appropriate@ standard requires the sanctions
correlate to the sanctionable conduct and that the sanctions not be
excessive.  Shook, 851 S.W.2d at
892.  These requirements reflect a need
to balance the court=s administration of justice, and the preservation of its
integrity and independence, with the rights of litigants.  See id. at 891. To conclude, as the
majority suggests, that the violation of a court order is a per se significant
interference, ignores these safeguards surrounding use of the inherent power
and expands it unnecessarily.[8]  In an appropriate case, failing
to attend a mediation could rise to the level of significant interference with
a trial court=s core functions.  Here, however, there is simply nothing in the
record to show how missing the mediation significantly interfered with the
court=s core
functions.  Accepting, as the majority
suggests, the violation of a court order as per se significant interference
with the court=s core functions is contrary to
established precedent.  See McWhorter,
993 S.W.2d at 789. 








The majority also remarks
that the trial court=s
sanctions order is bolstered by the fact Clarke became aware of Kenneth=s desire
to miss the mediation earlier in the week; however, this assertion is not
supported by the record.  Clarke=s
affidavit states that Kenneth commented about his reluctance to attend
on Friday, but the two agreed to discuss it further over the
weekend.  Clarke also stated she became
aware of Kenneth=s
unequivocal refusal to attend the mediation on Sunday, the same day she
contacted Terry=s
office.  Moreover, Clarke was under an
ethical obligation not to disclose her client=s initial
reluctance regarding the pending mediation because such a disclosure,
particularly in a family law case, could be used offensively against Kenneth
either in trial or in the mediation.

In discussing options
available to Clarke, the majority suggests that Clarke could have attended the
mediation without Kenneth.  Although it
is true that Clarke made a conscious decision to be absent from the mediation,
it is also true that her attendance without Kenneth would have been
futile.  She could not agree to any
settlement without her client=s
authorization.  An integral aspect of
mediation is the presence of the parties and, while perhaps not the most
compelling ground to miss the mediation, Clarke had no reason to be present
once Kenneth refused to attend. 
Moreover, whether we should affirm the trial court=s order
imposing sanctions is dependent on the evidentiary support for the order in the
record, not on feasible options available to the party sanctioned. 

In sum, the violation of a
court order should not be per se sanctionable conduct, as concluded by the
majority; record evidence must support the court=s
order.  See Toles, 45 S.W.3d at
267.  Considering the entire record,
there is no evidence that Clarke=s conduct
in failing to attend the mediation significantly interfered with the trial
court=s core
functions such that it rose to the level of a bad faith abuse of the judicial
process.  See McWhorter, 993
S.W.2d at 789 (reversing sanctions against attorney based on legally
insufficient evidence of significant interference with court=s
exercise of its core functions); Kutch, 831 S.W.2d at 510.

B.     Other
Sanctionable Conduct








Briefly, regarding Kenneth=s failure
to attend the court-ordered psychological evaluation, it is questionable that
sanctioning Clarke for Kenneth=s conduct
meets the Ajust and appropriate@
requirement for imposing sanctions.  The
blame for Kenneth=s conduct
and accompanying sanction must fall squarely with Kenneth alone rather than
jointly with Clarke. The record evidences that Kenneth was emotionally fragile,
and the very best Clarke, or any attorney, could do would be to sternly advise
the client to complete the evaluation. 
But, an attorney cannot force the client to complete the evaluation.  Under these circumstances, sanctioning Clarke
for her client=s decision is not Ajust@ because
it holds her responsible for the client=s willful
and independent behavior.  Even if
Kenneth=s failure
to complete his evaluation significantly interfered with the trial court=s core
functions and there was evidence of this in the record, there is no evidence
Clarke was responsible for his failure.

In conclusion, the
evidence in this case does not show that Clarke=s conduct
significantly interfered with the trial court=s exercise
of its core functions. 

For the foregoing reasons,
I would reverse the trial court=s
sanctions order as applied to Clarke.

 

/s/        Eva M. Guzman

Justice

 

Judgment
rendered and Majority and Dissenting Opinions filed August 30, 2005.

Panel
consists of Chief Justice Hedges and Justices Frost and Guzman.  (Frost, J., majority.)

 

 











[1]  The trial
court also stated in the sanctions order that failure to notify opposing
counsel of Kenneth=s Adesires@ to
dismiss his cause of action, Kenneth=s
failure to complete the court-ordered psychological evaluation, and failing to
appear at trial constituted bad faith litigation practices.  As keenly noted by the majority, Athere are potential problems with sanctioning Kenneth
and Clarke for some of this conduct.@  The majority then addresses only the
failure to attend mediation as conduct allegedly sufficient to support the sanctions
order, and further, in a footnote, merely states there is sufficient evidence
in the record that Kenneth failed to complete the court-ordered psychological
evaluation.  Although I conclude there
are Aproblems@ in
sanctioning Clarke for any of this conduct based on the record evidence,
I limit my discussion, as did the majority, to the failure to attend the
mediation and briefly address the failure to attend the court-ordered evaluation.  





[2]  Ironically,
the circumstances of this case aptly demonstrate the indispensability of
restraints on the trial court=s inherent power to sanction.  Because, against the backdrop of multiple
settings and appearances inherent in the practice of law generally, attorneys
in family law cases represent, advise, and seek to achieve the goals of clients
who are often governed by powerful, sometimes overwhelming, emotions.  Securing their cooperation with motion and
trial settings can be difficult.  In most
cases, attorneys are able to effectively counsel their clients to ensure full
participation, but there are those times when a client will be completely
uncooperative despite the attorney=s best
efforts.  In those cases, as in this
case, the attorney should not be sanctioned for conduct attributable solely to
an unpredictable and irrational client. 





[3]  Although the
majority cites to Kutch as authority for its statement that the failure
to attend the mediation constitutes significant interference with the court=s core functions, a close reading of Kutch
reveals this reliance is misplaced.  The Kutch
court did in fact state that a A[v]iolation of a court order relating to the court=s management and administration of a particular legal
claim generally will be a significant interference@ with the judiciary=s
functions, but did so only after a prudent discussion of the necessity to use
the power cautiously.  831 S.W.2d at 510B12.  The
majority overlooks this important aspect of the Kutch opinion by
concluding that a violation of a court order is significant interference.  Moreover, as noted later in this dissent, I
do not disagree that the violation of a court order may be a sufficient basis
for sanctions under the court=s inherent power. 
An exercise of that power, however, requires evidence in the record that
any violation significantly interfered with the court=s core functions. 
Id. at 510.                    






[4]  The majority
states that Clarke does not challenge the trial court=s determination that the sanctioned conduct
constituted bad faith litigation practices; however, we are to construe the
briefs liberally.  See Tex. R. App. P. 38.9.  Clarke states in her issue that there is no
evidence the conduct sanctioned significantly interfered with the court=s core functions, but her argument asserts that there
was no bad faith abuse of the judicial process. 
Accordingly, Clarke=s appellate argument includes the assertion that
failing to attend the mediation was not bad faith abuse of the judicial
process.  Moreover, the law regarding the
inherent power to sanction does not support the majority=s narrowing of Clarke=s
appellate argument.  See generally
Kutch, 831 S.W.2d at 510 (noting inherent power to sanction exists to the
extent necessary to deter or alleviate bad faith abuse of the judicial process,
Asuch as@ significant interference with the court=s core functions).





[5]  Notably, the
majority cites only one case in which a court concluded that failing to attend
a mediation was sanctionable conduct.  See
Roberts v. Rose, 37 S.W.3d 31, 33 (Tex. App.CSan
Antonio 2000, no pet.).  See 37
S.W.3d 31, 33 (Tex. App.CSan Antonio 2000, no pet.). See 37 S.W.3d 31,
33 (Tex. App.CSan Antonio 2000, no pet.). Roberts, however,
is distinguishable.  In that case, the
attorney did not inform the client the mediation had been scheduled, nor did he
inform opposing counsel of his intention to be absent from the mediation.  Id. at 33.  The trial court sanctioned the attorney for
failing to appear at the mediation, failing to notify the parties of their
intent to miss the mediation, and failing to attend the sanctions hearing.  Id. 
The facts in this case are not so egregious as those in Roberts.  Here, Clarke did not hide the intent to miss
the mediation from the others involved nor simply let the appointment pass;
rather, as soon as she was aware of Kenneth=s
refusal to attend, which unfortunately occurred on a Sunday morning, she attempted to
notify everyone concerned.  These key
facts are absent from Roberts. 
Id.  Indeed, many of the cases
upholding sanctions orders have done so based on serious abuses of the judicial
process, not under the circumstances existing here.  See, e.g., Bennett, 960 S.W.2d
at 40 (upholding sanctions order because counsel admitted participating in Afiling scheme@ to
ensure adjudication by a particular judge, stating A[t]his type of conduct, if tolerated, breeds
disrespect for and threatens the integrity of our judicial system.@); Kings Park, 101 S.W.3d at 541 (concluding
sanctions under inherent power was authorized based on allegations a paralegal
was instructed to steal documents from the chambers of the special trial
judge); see also Kennedy, 125 S.W.3d at 19 (noting that there was no
evidence that refusing to sign a check significantly interfered with the trial
court=s core functions); N.R.C., 94 S.W.3d at 810 n.7
(concluding that failure to pay ad litem fee was not sufficient bad faith abuse
of the judicial process to justify the sanction).





[6]  Also, we may
not infer a finding that the complained-of conduct significantly interfered with
the trial court=s core functions because omitted findings can only be
inferred when evidence supports those findings. 
See Tex. R. Civ. P. 299;
Black v. Dallas County Child Welfare Unit, 835 S.W.2d 626, 631 n.10
(Tex. 1992).  Here, there is no evidence
to support the conclusion that Clarke=s
failing to attend the mediation was a bad faith litigation practice, nor that
it significantly interfered with the court=s core
functions.  Hence, although we are
permitted to uphold a judgment if the conclusions of law contain errors, a
judgment must be supported by sufficient evidence and findings of fact.  Black, 835 S.W.2d at 631 n.10.





[7]  In Toles,
a divorce action, the husband moved for sanctions against his former wife and
her attorney, alleging a laundry list of actions subject to sanctions,
including violation of court orders relating to discovery and production of
evidence, appearing late for depositions, and concealing evidence.  45 S.W.3d 252, 266 (Tex. App.CDallas 2001, pet. denied).  The Dallas Court of Appeals reversed the
sanctions order citing a lack of evidentiary support in the record that the
wife=s conduct significantly interfered with the trial
court=s core functions. 
Id. at 267.





[8]  I agree with
the majority=s characterization of Kenneth=s conduct as sanctionable because he decided at the
last minute to be absent from the mediation, however, sanctions against Clarke
are not warranted under these facts.