**Spiro NIKOLOUZOS by his wife, Jannette Nikolouzos, Appellant,**

v.

**ST. LUKE'S EPISCOPAL HOSPITAL, Appellee.**

No. 14–05–00267–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 17, 2005.

Mario Caballero, Houston, for appellants.

Earnest W. Wotring, Houston, for appellee.

## MAJORITY OPINION

CHARLES W. SEYMORE, Justice.

This is an attempted interlocutory appeal from the oral denial of appellant's first and second applications for temporary

restraining orders. We dismiss the appeal for want of jurisdiction.

The underlying action is brought under the Advance Directives Act,[1] specifically Texas Health and Safety Code section 166.046(g), which provides a mechanism to seek a judicial extension of the time period in which to find alternative treatment for a patient when the hospital has determined that life-sustaining treatment is inappropriate. The statute provides:

> At the request of the patient or the person responsible for the health care decisions of the patient, the appropriate district or county court shall extend the time period provided under Subsection (e) [10 days after the written decision by the hospital's ethics committee is provided to the patient or responsible person] only if the court finds, by a preponderance of the evidence, that there is a reasonable expectation that a physician or health care facility that will honor the patient's directive [regarding life-sustaining treatment] will be found if the time extension is granted.

TEX. HEALTH & SAFETY CODE ANN. § 166.046(g) (Vernon Supp.2004–05).

Appellant filed an original petition seeking an extension of time for continued life support, injunctive relief, and monetary damages. At the same time, appellant filed an application for a temporary restraining order and temporary injunction. The trial court conducted a hearing on appellant's first application for temporary restraining order on March 9, 2005. At the conclusion of the hearing, the court orally denied the application. The court permitted appellant to file a second application for a temporary restraining order, and the court conducted a hearing on

March 11, 2005. The court again orally denied the application. Appellant then filed a notice of appeal from the denial of both TRO applications.

On March 15, 2005, appellee filed a motion to dismiss the appeal for want of jurisdiction. See TEX.R.APP. P. 42.3(a). Appellee argues that this court lacks jurisdiction over appellant's attempted appeal from the denial of temporary restraining orders in the absence of express statutory authority.

■ Because appellant sought other relief that remains pending in the trial court, the rulings appellant seeks to appeal are interlocutory. See North East I.S.D. v. Aldridge, 400 S.W.2d 893, 895 (Tex.1966) (noting "to be final a judgment must dispose of all issues and parties in a case"). It is well settled that appellate courts have jurisdiction to consider immediate appeals of interlocutory orders only if a statute specifically provides for appellate jurisdiction. Stary v. DeBord, 967 S.W.2d 352, 352–53 (Tex.1998). Section 166.046 does not expressly provide a right to appeal the trial court's ruling on a request for extension of time for life sustaining treatment, thus indicating the legislature did not intend to permit such an appeal. See, e.g., Ex parte Burr, 139 S.W.3d 446, 448 (Tex. App.-Dallas 2004, pet. stricken) (holding that failure to include right to appeal in statute indicated legislature did not intend to permit appeal from denial of temporary restraining order).

■ While an interlocutory appeal from the grant or denial of a temporary injunction is allowed, no statutory provision permits an appeal from a temporary restraining order.[2] See Lesikar v. Rappe-

---

1. TEX. HEALTH & SAFETY CODE ANN. §§ 166.001–166.166 (Vernon Supp.2004–05).

2. "A temporary restraining order is one entered as part of a motion for a temporary injunction, by which a party is restrained pending the hearing of the motion. A tempo-

*port*, 899 S.W.2d 654, 655 (Tex.1995); *Cross Media Network, Inc. v. Sandefer*, 2000 WL 1260251, \*1 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (not designated for publication); *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014 (Vernon Supp. 2004–05) (specifically permitting appeal of interlocutory orders in ten instances, but not including the grant or denial of a temporary restraining order). Thus, the grant or denial of a temporary restraining order is generally not appealable. *In re Tex. Nat. Res. Conservation Comm'n*, 85 S.W.3d 201, 205 (Tex.2002).

■ However, the fact that the order is denominated a temporary restraining order is not determinative of whether the order is appealable. Whether an order is a nonappealable temporary restraining order or an appealable temporary injunction depends on the order's characteristics and function, not its title. *Qwest Communications Corp. v. AT & T Corp.*, 24 S.W.3d 334, 336 (Tex.2000). If the force and effect of the order is indistinguishable from that of a temporary injunction, then the order is appealable. *Plant Process Equip., Inc. v. Harris*, 579 S.W.2d 53, 54 (Tex.App.-Houston [14th Dist.] 1979, no writ). The record in this case demonstrates that the initial relief requested was a temporary restraining order pending a subsequent hearing on a temporary injunction, and the parties at the hearings treated them as hearings on applications for temporary restraining orders. No testimony was taken at the hearings. At the conclusion of each hearing, the trial court denied appellants' applications for temporary restraining orders. Under these facts, the rulings at issue are denials of temporary restraining orders, not denials of injunctions.

■ On March 16, 2005, appellant filed a response to appellee's motion to dismiss. In support of the court's exercise of jurisdiction over the appeal from the denial of temporary restraining orders, appellant cites *Lord v. Clayton*, 163 Tex. 62, 352 S.W.2d 718 (1961). In *Lord,* however, the relators sought a *writ of mandamus* to resolve a jurisdictional dispute between two criminal courts, in which one court had issued an order restraining a habeas corpus proceeding in the other court. *Id.* at 719 (emphasis added). The Texas Supreme Court recognized that normally mandamus would not issue to interfere with a trial court's injunctive orders because, even though a restraining order is not appealable, any injunction would have been appealable and the parties would have been required to appeal rather than seek mandamus relief. *Id.* The court found that the jurisdictional conflict between the two courts had reached a point where the public interest and orderly administration of justice would suffer irreparably unless it resolved the conflict. *Id.* Although there is no question that appellant has the most compelling personal interest at stake, this court lacks the power to exercise jurisdiction where none is provided by law.

■ After having considered the motion and response, we hold that we lack jurisdiction over this attempted appeal from the denial of temporary restraining orders. When a party attempts to appeal a nonappealable interlocutory order, an appellate court has no jurisdiction except to dismiss the appeal. *Lipshy Motorcars, Inc. v. Sovereign Assocs., Inc.*, 944 S.W.2d 68, 70 (Tex.App.-Dallas 1997, no writ); *Harper v. Welchem, Inc.*, 799 S.W.2d 492, 496 (Tex. App.-Houston [14th Dist.] 1990, no writ).

rary injunction is one which operates until dissolved by an interlocutory order or until

the final hearing." *Del Valle I.S.D. v. Lopez*, 845 S.W.2d 808, 809 (Tex.1992).

Accordingly, we grant appellee's motion, and the appeal is ordered dismissed. This court's writ of injunction issued March 15, 2005, under our cause number 14–05–00273–CV is dissolved by its own terms.

FOWLER, J., concurring.

WANDA MCKEE FOWLER, Justice concurring.

I write separately for two reasons. First, in the very short time we have had to research the issues in this case, I believe the decision is correct; however, if it is not, I want to allay any thoughts by the Nikolouzoses that they might have been able to prevail on the merits if we had jurisdiction. Next, I want to address procedural problems inherent in the statute, making it an ineffectual tool for both families of patients and health care providers.

I turn first to the proof presented below. I acknowledge that our normal procedure when we have no jurisdiction is to dismiss the case without addressing its merits. This is an exceptional case, however, and the family might appreciate knowing that, in my view, the outcome would not have changed even if we had jurisdiction.

As noted in the majority opinion, the statute at issue requires proof, "by a preponderance of the evidence, that there is a reasonable expectation that a physician or health care facility that will honor the patient's directive will be found if the time extension is granted." TEX. HEALTH & SAFETY CODE ANN. § 166.046(g) (Vernon Supp.2004–05). A review of the sworn applications presented at the two hearings reveals that this level of proof was not met.

Mrs. Nikolouzos attached to her first application for TRO her own affidavit attesting to the accuracy of the facts contained in the application. According to those facts, "Plaintiff feels that there are doctors and hospitals who will be willing to continue treatment for Spiro if sufficient time is given to adequately contact all relevant parties." The trial judge told the parties this affidavit did not reflect a reasonable expectation that a doctor or another health care facility would honor Mr. or Mrs. Nikolouzos's directive. The trial judge also observed that no other affidavit, or any other evidence, was offered. As a result, the trial judge denied the TRO while expressing her compassion for the family's plight and her sincere regret.

Two days later, Mrs. Nikolouzos filed a second application for TRO, which the trial judge agreed to hear, though noting that a rehearing was an exceptional procedure for an exceptional case. At this second hearing, Mrs. Nikolouzos attached a more detailed affidavit in which she averred the following:

- that she had contacted Avalon Place, a skilled nursing home facility in San Antonio; and

- that a social worker there told her "it looked likely that Spiro would get accepted at Avalon Place and that they had a room for him."

She also attached a letter from Dr. John Sterling Meyer stating that Spiro Nikolouzos did not meet the criteria for "brain death" because cerebral blood flow was present.

When some question arose as to the accuracy of the doctor's affidavit and the sufficiency and admissibility of this evidence, the trial judge agreed twice to recess for several hours to enable Mrs. Nikolouzos to obtain additional evidence. However, even with these two recesses, Mrs. Nikolouzos was unable to obtain the necessary proof that a doctor or another health care facility was willing to take Mr. Nikolouzos.

By the conclusion of the additional hearings, counsel for Mrs. Nikolouzos was forced to admit that, in spite of their efforts, their most promising alternative health care facility, Avalon Place, had declined to accept Mr. Nikolouzos because his Medicare eligibility would be reduced to 80% coverage within two days. Mrs. Nikolouzos would need to obtain Medicaid benefits to cover the additional 20% of the cost of his care, and no application for Medicaid had been made. In addition, Mrs. Nikolouzos's attempt to obtain authorization from Dr. Bryan Walker to have Mr. Nikolouzos released to home care with a home-based ventilator failed; Dr. Walker told them this was impossible.

As for the proof already before the court from Dr. John Meyer that Mr. Nikolouzos was not brain dead, St. Luke's has pointed out, and the trial judge found, this evidence, if admissible, was irrelevant to the issue before the court. Section 166.046 permits the withdrawal of life-sustaining care for patients who are not brain dead if the hospital's ethics committee has determined the care is inappropriate.

So, this was the state of the record before the trial judge when she denied the request for temporary restraining order. She was correct to tell Mrs. Nikolouzos and other family members, "I'm sorry ... I believe that the [Nikolouzoses] have worked very hard and the family is very grieved, as any family would be, but I'm sorry that the TRO is still denied...."

Thus, although the family expended great effort to meet its burden, and although there were some glimmers of hope for it, ultimately the family was unable to give the court assurance of any sort that Mr. Nikolouzos could be moved elsewhere. Based upon this record, I would not have found that the trial judge abused her discretion in denying Mrs. Nikolouzos's applications for temporary restraining orders.

This leads me to my second point. This statute is replete with procedural problems that threaten to sabotage a family's attempt to obtain additional time under section 166.046(g) to locate alternate care for its loved one. The problems all stem from lack of specificity in the statute and could be rectified if the legislature chose to be as specific in this statute as it has been, for example, with the procedures a minor must follow to obtain an abortion without notification to one of her parents. TEX. FAM.CODE §§ 33.001 et seq. This subject deserves no less specificity because this statute affects no less than the life and death of men, women, and children. Counsel's attempts to comply with the statute and its short deadlines underscore the problems the statute creates. I summarize them below.

To obtain an immediate hearing within the ten-day period provided by the statute, Mrs. Nikolouzos filed an application for a TRO because the statute offered no alternatives. But as we have already held, this procedural avenue is inadequate, most obviously because it leaves a party without a right to appeal. Counsel confronted other problems also. The statute requires proof by a preponderance of the evidence that "there is a reasonable expectation that a physician or health care facility that will honor the patient's directive will be found if the time extension is granted." TEX. HEALTH & SAFETY CODE ANN. § 166.046(g) (Vernon Supp.2004–05). Hearings on applications for TROs, however, are not evidentiary hearings. The purpose of a TRO is to preserve the status quo of the subject matter of the litigation until a preliminary hearing can be held on an application for a temporary injunction. *Cannan v. Green Oaks Apts., Ltd.*, 758 S.W.2d 753, 755 (Tex. 1988) (per curiam). The status quo is the last, actual, peaceable, noncontested status that preceded the controversy. *Big Three*

*Indus., Inc. v. R.R. Comm'n*, 618 S.W.2d 543, 548 (Tex.1981); *State v. Southwestern Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex. 1975). The last noncontested status in this case occurred before St. Luke's determined that continued life-sustaining care was inappropriate. Thus, Mrs. Nikolouzos sought a TRO to maintain that status quo pending a hearing on a temporary injunction, at which time evidence would be produced that another health care facility would accept Mr. Nikolouzos. Under this unique statutory scheme, the time to produce his evidence was at the TRO hearing, not the temporary injunction hearing. In short, the lack of a specific procedure leaves already bereaved families with no clear procedure to secure alternate care for their loved one.

Admittedly, the legislature has many important issues to address in an undeniably short time. But this is an important issue that has a solution. If the legislature addresses the problems listed below, all of which either arose in this case, or could have arisen, it can at the very least lessen the load for both families and health care facilities.

First, the statute should state specifically in which court a family or trustee must file the action. Currently, the statute provides only that the action should be filed in "the appropriate district or county court." TEX. HEALTH & SAFETY CODE ANN. § 166.046(g) (Vernon Supp.2004–05). When the Nikolouzoses filed in the district court, St. Luke's moved for a dismissal claiming that the probate court in Harris County had exclusive jurisdiction. *See* TEX. GOV'T CODE § 25.0021(b). In contrast, the parental notification bill leaves no room for guess work by declaring that a bypass request may be "filed in any county court at law, court having probate jurisdiction, or district court, including a family

district court, in this state." TEX. FAM. CODE. § 33.003(b).

Next, the statute should direct a family what to call their action, specify the steps a family must take to have its complaint heard, and include timetables within which the parties and the court must act. Currently, the statute gives no direction on these issues. *See* TEX. HEALTH & SAFETY CODE ANN. § 166.046 (Vernon Supp.2004–05). No doubt perplexed as to the proper procedure to follow, counsel for Mrs. Nikolouzos filed an original and amended petition in which he asked for a TRO and injunctive relief; probably he did this because procedures are already established in Harris County for a judge to provide a quick hearing when a party requests a TRO. In contrast, the parental notification bill tells a requesting party and the courts and their clerks exactly what an action should be called, informing all of these persons that a minor should file an "application." TEX. FAM.CODE § 33.03(a). Styling the action as an "application" and referring to the parental notification statute enables a court and its personnel to know immediately that they are dealing with a very specific type of case with its own unique accelerated procedures.

Finally, the statute should state if the family or hospital has the right of appeal from a ruling on a request for an extension of time under section 166.046(g). Currently, the statute says nothing about an appeal. *See* TEX. HEALTH & SAFETY CODE ANN. § 166.046 (Vernon Supp.2004–05). In the parental notification bill, the legislature explicitly addressed the right to appeal. TEX. FAM.CODE § 33.004.

In short, in its current form, the statute creates confusion where there should be clarity. This confusion not only is a disservice to both families and health care providers, but also ironically increases litigation when it should lessen it. I respect-

fully urge the legislature to revisit section 166.046 and to clarify the procedures a family must follow to secure alternate care for their loved one. The legislature has already seen the importance of clarity at the inception of life; clarity is no less important at the end of life.

With these comments, I concur in the court's opinion and judgment.