COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| CANTU SERVICES, INC., | § | |
| | | No. 08-09-00003-CV |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 205th District Court |
| | § | |
| UNITED FREEDOM ASSOCIATES, | | of El Paso County, Texas |
| INC., | § | |
| | | (TC# 2008-4768) |
| Appellee. | § | |

**O P I N I O N**

In its sole issue, Appellant, Cantu Services, Inc., (Cantu), appeals the trial court's grant of Appellee's (UFA's) plea to the jurisdiction and dismissal of its lawsuit. Finding the appeal interlocutory, we dismiss the appeal.

**BACKGROUND**

The Randolph-Sheppard Act (the Act) permits blind persons to operate vending facilities on federal property, with priority given to blind persons licensed by a State agency. The Randolph-Sheppard Act, 20 U.S.C.A. §§107(a)-(b) (2010). Pursuant to the Act, the Texas Department of Assistive and Rehabilitative Services (DARS), a state agency, is responsible for licensing blind persons to operate vending facilities on state, federal and other property through the Business Enterprises of Texas program. *See* 20 U.S.C.A. §§107(a)-(b) (2010); 34 C.F.R. §§ 395.1 - 395.38 (2010); TEX. HUM. RES. CODE ANN. § 94.016 (Vernon Supp. 2010); 40 T.A.C. §106.1201 (2010).

Under these federal and state provisions, Cantu, a food-services consultant, prepared on behalf of DARS, and DARS submitted, a bid for food services at Fort Bliss, Texas. The United States government awarded the Fort Bliss food-services contract to DARS for the period of

November 1, 2003, to October 31, 2004, with "nine option years." DARS selected Mr. Harvey Johnson, a visually-impaired individual, to serve as its licensed manager at Fort Bliss. According to Cantu, Johnson was to operate the dining facilities at Fort Bliss, and Cantu, under a contract with DARS, was to serve as Johnson's consultant and provide actual services, personnel, expertise, and financial support.

From November 1, 2007, to October 31, 2008, Cantu contracted directly with Johnson by means of an operating agreement to provide consulting and other services. Under each of Cantu's contracts with DARS and, subsequently, with Johnson, the United States government paid DARS for the food services provided and DARS, in turn, forwarded all collected funds to Cantu. Cantu paid expenses, kept its profit, and distributed profits to Johnson.

Thereafter, pursuant to a provision in his operating agreement with Cantu and upon receiving approval to do so from DARS, Johnson exercised his option to operate the Fort Bliss food-services contract independently of Cantu beginning November 1, 2008. Cantu ceased providing services to Johnson on October 31, 2008. According to Cantu, its unpaid invoices for its services to Johnson through October 31, 2008, totaled $2,516,760.78. Johnson also allegedly owed Cantu additional sums for "unbilled' contract modifications that it had performed prior to November 1, 2008, and possibly other monies.

Although not well-developed, the record and briefs indicate that Johnson's corporation, United Freedom Associates, Inc. (UFA), Appellee, commenced providing food services at Fort Bliss on November 1, 2008. Approximately three weeks later, UFA issued to Cantu a cashier's check in the amount of $88,661.17. The check was accompanied by a purchase voucher indicating that DARS had paid a sum of $227,338.33 directly to UFA rather than to Cantu, even though UFA had not been a party to any of the earlier contracts between DARS, Johnson, and Cantu. According to

Cantu, UFA "unilaterally divided the [DARS] check and paid Cantu 39% of the total" even though all debts and expenses related to the food-services operation prior to November 1, 2008, were incurred on Cantu's account. In other words, Cantu asserted that it was paying "100% of all expenses, while only receiving 39% of the proceeds." Cantu believed that it, rather than UFA, should directly receive all payments from DARS, pay expenses, and distribute profits for the services occurring prior to November 1, 2008, in accordance with its agreement with Johnson. Despite the new, unsatisfactory payment method and the alleged underpayment of its receivables, Cantu continued to pay contract and employee liabilities. Cantu's requests that payments be made directly to it were allegedly refused by both DARS and UFA.

*The Lawsuit and Request for Injunctive Relief*

On December 9 and 11, 2008, respectively, Cantu filed its original and first amended petitions and applications for temporary restraining order and other injunctive relief. In the petition and application, Cantu named UFA and DARS as defendants and sought (1) to restrain and enjoin DARS from issuing payments to any entity other than Cantu with respect to its pre-November 1, 2008, services, and (2) to restrain and enjoin UFA from receiving such payments and from expending, transferring, or secreting such payments. Cantu also asserted two causes of action against UFA for conversion of its property and tortious interference with its contractual relationship with Johnson, requesting damages, interest, court costs, and other relief upon a trial on the merits.

UFA filed a motion to transfer venue, asserting that mandatory venue for suit against DARS, a state agency, was in Travis County.[1] UFA also filed a plea to the jurisdiction pursuant to Section 22.002(c) of the Texas Government Code, asserting that the Texas Supreme Court alone possessed

---

[1] Section 15.014 states, "An action for mandamus against the head of a department of the state government shall be brought in Travis County." TEX. CIV. PRAC. & REM. CODE ANN. § 15.014 (Vernon 2002).

sole jurisdiction over Cantu's attempt to have the trial court restrain and enjoin DARS. TEX. GOV'T CODE ANN. § 22.002(c) (Vernon 2004). DARS did not file a plea to the jurisdiction.

*The Hearing*

At the plea-to-the-jurisdiction hearing on December 12, 2008, in addition to the arguments it set forth in its motion and plea, UFA asserted that Cantu had failed to meet jurisdictional requirements when it filed suit against DARS rather than its executive officer, and had failed to plead or prove that DARS had committed any unlawful or unconstitutional act which would overcome DARS' sovereign immunity or otherwise justify Cantu's requested relief.

Johnson stated that Cantu had not named him individually as a defendant in the case in an attempt to escape mandatory mediation and arbitration provisions contained in the operating agreement between himself and Cantu, and argued that the trial court was not authorized to hear these matters because of the mediation and arbitration provisions.

Cantu argued that UFA was not entitled to immunity and was improperly asserting an affirmative defense which it did not have, namely, that it was not a state entity and that the provisions uniquely applicable to a state agency did not extend to UFA as a co-defendant. Cantu also argued that because it was seeking to restrain an unlawful act, rather than compel a lawful action, Section 22.002(c) of the Texas Government Code was inapplicable and the trial court, consequently, had jurisdiction to enjoin unlawful activity by the State of Texas, its departments, or agents. Cantu also asserted that "intrinsic in [its] pleading [was] a constitutional takings claim" and stated that a plea to the jurisdiction should not be granted when a pleading could be amended to present a valid cause of action. Cantu requested an opportunity to brief its response to the plea to the jurisdiction, and informed the trial court that it was only seeking to preserve the status quo by means of a 14-day restraining order.

DARS, who appeared on its own behalf at the hearing, replied that although it had not yet been served with Cantu's lawsuit and motion, it would also file a plea to the jurisdiction because DARS retained sovereign immunity.[2] In challenging the jurisdiction of the court, DARS asserted that Cantu had the burden of showing that the trial court had jurisdiction and was required to demonstrate that DARS had waived sovereign immunity. DARS noted that because Cantu had not plead a cause of action against DARS, that there could be no waiver of sovereign immunity or subject matter jurisdiction by which the trial court could entertain Cantu's lawsuit against DARS. As to Cantu's request for a temporary restraining order and injunctive relief, DARS argued that even if there had been a waiver of sovereign immunity, an injunction is an equitable remedy, not a cause of action. To be entitled to injunctive relief, DARS contended, Cantu must be able to prove a probable right of recovery through a claim or cause of action and, absent an alleged claim or cause of action, the trial court had no authority to issue the injunction.

Regarding Cantu's assertion that its pleadings intrinsically contained a constitutional-takings claim, DARS reminded the trial court that constitutional takings involve tangible property such as real estate, not intangible property such as money. Therefore, DARS asserted, "to the extent that [Cantu is] trying to invent a cause of action which is not stated in their lawsuit, the one that they have provided to the Court is similarly subject to a plea to the jurisdiction. There is no jurisdiction in that." To be entitled to an injunction, DARS noted that Cantu must be able to prove that there was a likelihood of success but would not be able to do so unless the trial court had jurisdiction.

After considering these and other arguments, the trial court granted UFA's plea to the jurisdiction, dismissed the case without prejudice, and informed the parties that it would entertain an amended application for a restraining order if it became necessary. Cantu now appeals the trial

---

[2] DARS participated in the hearing telephonically.

court's granting of UFA's plea to the jurisdiction and dismissal of the case without prejudice.

## DISCUSSION

On appeal, Cantu asserts that the trial court erred both when it granted UFA's plea to the jurisdiction as it was based upon a claim of governmental immunity, and also when it dismissed its claims for injunctive relief and money damages.

### *Appellate Jurisdiction*

We must first determine, as a threshold matter, whether or not this Court has jurisdiction to review the trial court's grant of UFA's plea to the jurisdiction. *El Paso County v. Alvarado*, 290 S.W.3d 895, 898 (Tex. App. – El Paso 2009, no pet.). As an appellate court, we have limited jurisdiction "over final judgments and such interlocutory orders as the legislature deems appealable." TEX. CIV. PRAC. & REM. CODE ANN. §§ 51.012 & 51.014 (Vernon 2008); *EPISD v. Alspini*, 315 S.W.3d 144, 148 (Tex. App. – El Paso 2010, no pet.).

### *Final Disposition and Interlocutory Orders*

For appellate purposes, a judgment is final if it disposes of all pending claims and parties, except as necessary to carry out the lower court's decree. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). Where an order follows a traditional trial on the merits, it is presumed to be final. *Lehmann*, 39 S.W.3d at 199; *see Ne. Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 895 (Tex. 1966). When the trial court has not conducted a traditional trial on the merits, the order or judgment is not final for appellate purposes "unless it actually disposes of every pending claim and party or unless it clearly and unequivocally states that it finally disposes of all claims and all parties." *Lehmann*, 39 S.W.3d at 205; *Salas v. State Farm Mut. Auto. Ins. Co.*, 226 S.W.3d 692, 695 (Tex. App. – El Paso 2007, no pet.); *Dick Poe Motors, Inc. v. DaimlerChrysler Corp.*, 169 S.W.3d 507, 510 (Tex. App. – El Paso 2005, no pet.). As the Texas Supreme Court has explained:

An order that disposes of claims by only one of multiple plaintiffs or against one of multiple defendants does not adjudicate claims by or against other parties. An order does not dispose of all claims and all parties merely because it is entitled "final", or because the word "final" appears elsewhere in the order, or even because it awards costs. Nor does an order completely dispose of a case merely because it states that it is appealable, since even interlocutory orders may sometimes be appealable. Rather, there must be some other clear indication that the trial court intended the order to completely dispose of the entire case. Language that the plaintiff take nothing by his claims in the case, or that the case is dismissed, shows finality if there are no other claims by other parties; but language that "plaintiff take nothing by his claims against X" when there is more than one defendant or other parties in the case does not indicate finality. *Lehmann*, 39 S.W.3d at 205; *Ritzell v. Espeche*, 87 S.W.3d 536, 538 (Tex. 2002).

Consequently, as an appellate court, we look to the record in determining whether the trial court's order is final. *Lehmann*, 39 S.W.3d at 205-206; *Salas*, 226 S.W.3d at 695; *Dick Poe Motors, Inc.*, 169 S.W.3d at 510. A trial court's order is not final where the record demonstrates the existence of claims or parties not mentioned in the order. *Lehmann*, 39 S.W.3d at 206.

*Interlocutory Appeals*

Where an order does not dispose of all issues and all parties, it is interlocutory and is not appealable without express statutory authorization, severance, dismissal, or non-suit. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992); *see also Hervey v. Flores*, 975 S.W.2d 21, 24 (Tex. App. – El Paso 1998, pet. denied). A person may appeal from an interlocutory order of a district court that grants or denies a plea to the jurisdiction by a governmental unit as that term is defined by Section 101.001(3) of the Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (Vernon 2008), § 101.001(3) (Vernon 2005). When a party attempts to appeal a non-appealable interlocutory order, we have no jurisdiction except to dismiss the appeal. *Nikolouzos v. St. Luke's Episcopal Hospital*, 162 S.W.3d 678, 681 (Tex. App. – Houston [14th Dist.] 2005, no pet.).

*Application*

The trial court's Order Granting Plea to the Jurisdiction provides:

> On this day the Court considered United Freedom Associates, Inc.'s Plea to the Jurisdiction. It is the opinion of this Court that the Plea should be granted. IT IS, THEREFORE, ORDERED that the Plea to the Jurisdiction is GRANTED, and this case is hereby dismissed in its entirety without prejudice.

Initially, we question whether UFA can raise statutory immunity defenses as it is not a governmental entity. Typically, a defendant cannot urge another party's defense. *See City of Alton v. Sharyland Water Supply Corp.*, 145 S.W.3d 673, 682 (Tex. App. – Corpus Christi 2004, no pet.) (explaining, for example, that third-party defendant must assert his own defenses only as the defense of an original defendant is not available to the third-party defendant against a plaintiff; here, appellate court held third-party independent contractors were not entitled to assert defendant's governmental-immunity defense and, because third-parties failed to assert their own independent defenses, appellate court overruled issue on appeal, affirming trial court's plea to the jurisdiction.).[3] Nevertheless, assuming that the trial court accepted the sovereign-immunity arguments before it, we note that although the sovereign-immunity statute applies to the injunctive relief sought, it would not constitute a defense as to the causes of action presented by Cantu against UFA. As a result, the trial court only granted sovereign-immunity relief as to some, but not all, of Cantu's claims. Those claims that are not subject to the sovereign-immunity waiver, i.e., conversion of property and tortious interference of contract, remain pending as to UFA. We must, therefore, conclude that the trial court's order failed to dispose of all of Appellant's causes of action against UFA. *In re Burlington,* 167 S.W.3d at 830.

Moreover, based on the procedural history of the case, we interpret the court's order as merely granting UFA's plea to the jurisdiction. As such, it disposed of Cantu's case against UFA,

---

[3] While this case was addressed under former Rule 38(a) of the Texas Rules of Civil Procedure, it provides a useful analogy for our purposes.

not against DARS. Indeed, the record reflects that UFA and DARS were, at all times, represented by separate counsel. While it seemingly waived service when it appeared at the hearing, DARS did not join in UFA's plea to the jurisdiction but rather informed the court at the hearing that it was there to represent its own interests and that it would be filing its own plea to the jurisdiction. DARS never filed a plea to the jurisdiction. The trial court could not grant relief to DARS without a request. After the trial court granted UFA's plea to the jurisdiction, it did not sever, dismiss, or non-suit any of Cantu's claims against DARS. Thus, we must conclude that the trial court's order granting UFA's plea to the jurisdiction did not dispose of all parties.

Because the trial court's order failed to dispose of all parties and all causes of action, it is interlocutory. We next consider whether the interlocutory order is appealable and conclude that it is not. *Anglin*, 842 S.W.2d at 272; *see also Hervey*, 975 S.W.2d at 24. As UFA is not a governmental unit, we do not find that any of the statutorily-permitted exceptions in Section 51.014 would permit Cantu's appeal of the trial court's interlocutory order in this case. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (Vernon 2008), § 101.001(3) (Vernon 2005). Accordingly, finding that the appeal is interlocutory, we dismiss the same for want of jurisdiction. TEX. CIV. PRAC. & REM. CODE ANN. §§ 51.012 & 51.014 (Vernon 2008); *Lehmann*, 39 S.W.3d at 195; *El Paso County*, 290 S.W.3d at 898; *Nikolouzos*, 162 S.W.3d at 681.

## CONCLUSION

The appeal is dismissed.

_____
GUADALUPE RIVERA, Justice

November 3, 2010

Before McClure, J., Rivera, J., and Antcliff, Judge
Antcliff, Judge, sitting by assignment