COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS


CANTU SERVICES, INC.,


 Appellant,


v.



UNITED FREEDOM ASSOCIATES,
INC.,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-09-00003-CV



Appeal from the


205th District Court 


of El Paso County, Texas 


(TC# 2008-4768) 


O P I N I O N


 In its sole issue, Appellant, Cantu Services, Inc., (Cantu), appeals the trial court's grant of
Appellee's (UFA's) plea to the jurisdiction and dismissal of its lawsuit. Finding the appeal
interlocutory, we dismiss the appeal.

BACKGROUND


 The Randolph-Sheppard Act (the Act) permits blind persons to operate vending facilities on
federal property, with priority given to blind persons licensed by a State agency. The Randolph-Sheppard Act, 20 U.S.C.A. §§107(a)-(b) (2010). Pursuant to the Act, the Texas Department of
Assistive and Rehabilitative Services (DARS), a state agency, is responsible for licensing blind
persons to operate vending facilities on state, federal and other property through the Business
Enterprises of Texas program. See 20 U.S.C.A. §§107(a)-(b) (2010); 34 C.F.R. §§ 395.1 - 395.38
(2010); Tex. Hum. Res. Code Ann. § 94.016 (Vernon Supp. 2010); 40 T.A.C. §106.1201 (2010).

 Under these federal and state provisions, Cantu, a food-services consultant, prepared on
behalf of DARS, and DARS submitted, a bid for food services at Fort Bliss, Texas. The United
States government awarded the Fort Bliss food-services contract to DARS for the period of
November 1, 2003, to October 31, 2004, with "nine option years." DARS selected Mr. Harvey
Johnson, a visually-impaired individual, to serve as its licensed manager at Fort Bliss. According
to Cantu, Johnson was to operate the dining facilities at Fort Bliss, and Cantu, under a contract with
DARS, was to serve as Johnson's consultant and provide actual services, personnel, expertise, and
financial support.

 From November 1, 2007, to October 31, 2008, Cantu contracted directly with Johnson by
means of an operating agreement to provide consulting and other services. Under each of Cantu's
contracts with DARS and, subsequently, with Johnson, the United States government paid DARS
for the food services provided and DARS, in turn, forwarded all collected funds to Cantu. Cantu
paid expenses, kept its profit, and distributed profits to Johnson.

 Thereafter, pursuant to a provision in his operating agreement with Cantu and upon receiving
approval to do so from DARS, Johnson exercised his option to operate the Fort Bliss food-services
contract independently of Cantu beginning November 1, 2008. Cantu ceased providing services to
Johnson on October 31, 2008. According to Cantu, its unpaid invoices for its services to Johnson
through October 31, 2008, totaled $2,516,760.78. Johnson also allegedly owed Cantu additional
sums for "unbilled' contract modifications that it had performed prior to November 1, 2008, and
possibly other monies.

 Although not well-developed, the record and briefs indicate that Johnson's corporation,
United Freedom Associates, Inc. (UFA), Appellee, commenced providing food services at Fort Bliss
on November 1, 2008. Approximately three weeks later, UFA issued to Cantu a cashier's check in
the amount of $88,661.17. The check was accompanied by a purchase voucher indicating that
DARS had paid a sum of $227,338.33 directly to UFA rather than to Cantu, even though UFA had
not been a party to any of the earlier contracts between DARS, Johnson, and Cantu. According to
Cantu, UFA "unilaterally divided the [DARS] check and paid Cantu 39% of the total" even though
all debts and expenses related to the food-services operation prior to November 1, 2008, were
incurred on Cantu's account. In other words, Cantu asserted that it was paying "100% of all
expenses, while only receiving 39% of the proceeds." Cantu believed that it, rather than UFA,
should directly receive all payments from DARS, pay expenses, and distribute profits for the services
occurring prior to November 1, 2008, in accordance with its agreement with Johnson. Despite the
new, unsatisfactory payment method and the alleged underpayment of its receivables, Cantu
continued to pay contract and employee liabilities. Cantu's requests that payments be made directly
to it were allegedly refused by both DARS and UFA.

The Lawsuit and Request for Injunctive Relief

 On December 9 and 11, 2008, respectively, Cantu filed its original and first amended
petitions and applications for temporary restraining order and other injunctive relief. In the petition
and application, Cantu named UFA and DARS as defendants and sought (1) to restrain and enjoin
DARS from issuing payments to any entity other than Cantu with respect to its pre-November 1,
2008, services, and (2) to restrain and enjoin UFA from receiving such payments and from
expending, transferring, or secreting such payments. Cantu also asserted two causes of action against
UFA for conversion of its property and tortious interference with its contractual relationship with
Johnson, requesting damages, interest, court costs, and other relief upon a trial on the merits.

 UFA filed a motion to transfer venue, asserting that mandatory venue for suit against DARS,
a state agency, was in Travis County. (1) UFA also filed a plea to the jurisdiction pursuant to Section
22.002(c) of the Texas Government Code, asserting that the Texas Supreme Court alone possessed
sole jurisdiction over Cantu's attempt to have the trial court restrain and enjoin DARS. Tex. Gov't
Code Ann. § 22.002(c) (Vernon 2004). DARS did not file a plea to the jurisdiction.

The Hearing

 At the plea-to-the-jurisdiction hearing on December 12, 2008, in addition to the arguments
it set forth in its motion and plea, UFA asserted that Cantu had failed to meet jurisdictional
requirements when it filed suit against DARS rather than its executive officer, and had failed to plead
or prove that DARS had committed any unlawful or unconstitutional act which would overcome
DARS' sovereign immunity or otherwise justify Cantu's requested relief.

 Johnson stated that Cantu had not named him individually as a defendant in the case in an
attempt to escape mandatory mediation and arbitration provisions contained in the operating
agreement between himself and Cantu, and argued that the trial court was not authorized to hear
these matters because of the mediation and arbitration provisions.

 Cantu argued that UFA was not entitled to immunity and was improperly asserting an
affirmative defense which it did not have, namely, that it was not a state entity and that the
provisions uniquely applicable to a state agency did not extend to UFA as a co-defendant. Cantu
also argued that because it was seeking to restrain an unlawful act, rather than compel a lawful
action, Section 22.002(c) of the Texas Government Code was inapplicable and the trial court,
consequently, had jurisdiction to enjoin unlawful activity by the State of Texas, its departments, or
agents. Cantu also asserted that "intrinsic in [its] pleading [was] a constitutional takings claim" and
stated that a plea to the jurisdiction should not be granted when a pleading could be amended to
present a valid cause of action. Cantu requested an opportunity to brief its response to the plea to
the jurisdiction, and informed the trial court that it was only seeking to preserve the status quo by
means of a 14-day restraining order.

 DARS, who appeared on its own behalf at the hearing, replied that although it had not yet
been served with Cantu's lawsuit and motion, it would also file a plea to the jurisdiction because
DARS retained sovereign immunity. (2) In challenging the jurisdiction of the court, DARS asserted
that Cantu had the burden of showing that the trial court had jurisdiction and was required to
demonstrate that DARS had waived sovereign immunity. DARS noted that because Cantu had not
plead a cause of action against DARS, that there could be no waiver of sovereign immunity or
subject matter jurisdiction by which the trial court could entertain Cantu's lawsuit against DARS. 
As to Cantu's request for a temporary restraining order and injunctive relief, DARS argued that even
if there had been a waiver of sovereign immunity, an injunction is an equitable remedy, not a cause
of action. To be entitled to injunctive relief, DARS contended, Cantu must be able to prove a
probable right of recovery through a claim or cause of action and, absent an alleged claim or cause
of action, the trial court had no authority to issue the injunction.

 Regarding Cantu's assertion that its pleadings intrinsically contained a constitutional-takings
claim, DARS reminded the trial court that constitutional takings involve tangible property such as
real estate, not intangible property such as money. Therefore, DARS asserted, "to the extent that
[Cantu is] trying to invent a cause of action which is not stated in their lawsuit, the one that they have
provided to the Court is similarly subject to a plea to the jurisdiction. There is no jurisdiction in
that." To be entitled to an injunction, DARS noted that Cantu must be able to prove that there was
a likelihood of success but would not be able to do so unless the trial court had jurisdiction.

 After considering these and other arguments, the trial court granted UFA's plea to the
jurisdiction, dismissed the case without prejudice, and informed the parties that it would entertain
an amended application for a restraining order if it became necessary. Cantu now appeals the trial
court's granting of UFA's plea to the jurisdiction and dismissal of the case without prejudice.

DISCUSSION

 On appeal, Cantu asserts that the trial court erred both when it granted UFA's plea to the
jurisdiction as it was based upon a claim of governmental immunity, and also when it dismissed its
claims for injunctive relief and money damages.

Appellate Jurisdiction

 We must first determine, as a threshold matter, whether or not this Court has jurisdiction to
review the trial court's grant of UFA's plea to the jurisdiction. El Paso County v. Alvarado, 290
S.W.3d 895, 898 (Tex. App. - El Paso 2009, no pet.). As an appellate court, we have limited
jurisdiction "over final judgments and such interlocutory orders as the legislature deems appealable." 
Tex. Civ. Prac. & Rem. Code Ann. §§ 51.012 & 51.014 (Vernon 2008); EPISD v. Alspini, 315
S.W.3d 144, 148 (Tex. App. - El Paso 2010, no pet.).

Final Disposition and Interlocutory Orders

 For appellate purposes, a judgment is final if it disposes of all pending claims and parties,
except as necessary to carry out the lower court's decree. Lehmann v. Har-Con Corp., 39 S.W.3d
191, 195 (Tex. 2001). Where an order follows a traditional trial on the merits, it is presumed to be
final. Lehmann, 39 S.W.3d at 199; see Ne. Indep. Sch. Dist. v. Aldridge, 400 S.W.2d 893, 895 (Tex.
1966). When the trial court has not conducted a traditional trial on the merits, the order or judgment
is not final for appellate purposes "unless it actually disposes of every pending claim and party or
unless it clearly and unequivocally states that it finally disposes of all claims and all parties." 
Lehmann, 39 S.W.3d at 205; Salas v. State Farm Mut. Auto. Ins. Co., 226 S.W.3d 692, 695 (Tex.
App. - El Paso 2007, no pet.); Dick Poe Motors, Inc. v. DaimlerChrysler Corp., 169 S.W.3d 507,
510 (Tex. App. - El Paso 2005, no pet.). As the Texas Supreme Court has explained:

An order that disposes of claims by only one of multiple plaintiffs or against one of
multiple defendants does not adjudicate claims by or against other parties. An order
does not dispose of all claims and all parties merely because it is entitled "final", or
because the word "final" appears elsewhere in the order, or even because it awards
costs. Nor does an order completely dispose of a case merely because it states that
it is appealable, since even interlocutory orders may sometimes be appealable. 
Rather, there must be some other clear indication that the trial court intended the
order to completely dispose of the entire case. Language that the plaintiff take
nothing by his claims in the case, or that the case is dismissed, shows finality if there
are no other claims by other parties; but language that "plaintiff take nothing by his
claims against X" when there is more than one defendant or other parties in the case
does not indicate finality. Lehmann, 39 S.W.3d at 205; Ritzell v. Espeche, 87 S.W.3d
536, 538 (Tex. 2002).


Consequently, as an appellate court, we look to the record in determining whether the trial court's
order is final. Lehmann, 39 S.W.3d at 205-206; Salas, 226 S.W.3d at 695; Dick Poe Motors, Inc.,
169 S.W.3d at 510. A trial court's order is not final where the record demonstrates the existence of
claims or parties not mentioned in the order. Lehmann, 39 S.W.3d at 206.

Interlocutory Appeals

 Where an order does not dispose of all issues and all parties, it is interlocutory and is not
appealable without express statutory authorization, severance, dismissal, or non-suit. Jack B. Anglin
Co. v. Tipps, 842 S.W.2d 266, 272 (Tex. 1992); see also Hervey v. Flores, 975 S.W.2d 21, 24 (Tex.
App. - El Paso 1998, pet. denied). A person may appeal from an interlocutory order of a district
court that grants or denies a plea to the jurisdiction by a governmental unit as that term is defined
by Section 101.001(3) of the Civil Practice and Remedies Code. Tex. Civ. Prac. & Rem. Code
Ann. § 51.014(a)(8) (Vernon 2008), § 101.001(3) (Vernon 2005). When a party attempts to appeal
a non-appealable interlocutory order, we have no jurisdiction except to dismiss the appeal. 
Nikolouzos v. St. Luke's Episcopal Hospital, 162 S.W.3d 678, 681 (Tex. App. - Houston [14th
Dist.] 2005, no pet.).

Application

 The trial court's Order Granting Plea to the Jurisdiction provides:

 On this day the Court considered United Freedom Associates, Inc.'s Plea to
the Jurisdiction. It is the opinion of this Court that the Plea should be granted.

 IT IS, THEREFORE, ORDERED that the Plea to the Jurisdiction is GRANTED, and
this case is hereby dismissed in its entirety without prejudice.


 Initially, we question whether UFA can raise statutory immunity defenses as it is not a
governmental entity. Typically, a defendant cannot urge another party's defense. See City of Alton
v. Sharyland Water Supply Corp., 145 S.W.3d 673, 682 (Tex. App. - Corpus Christi 2004, no pet.)
(explaining, for example, that third-party defendant must assert his own defenses only as the defense
of an original defendant is not available to the third-party defendant against a plaintiff; here,
appellate court held third-party independent contractors were not entitled to assert defendant's
governmental-immunity defense and, because third-parties failed to assert their own independent
defenses, appellate court overruled issue on appeal, affirming trial court's plea to the jurisdiction.). (3) 
Nevertheless, assuming that the trial court accepted the sovereign-immunity arguments before it, we
note that although the sovereign-immunity statute applies to the injunctive relief sought, it would
not constitute a defense as to the causes of action presented by Cantu against UFA. As a result, the
trial court only granted sovereign-immunity relief as to some, but not all, of Cantu's claims. Those
claims that are not subject to the sovereign-immunity waiver, i.e., conversion of property and tortious
interference of contract, remain pending as to UFA. We must, therefore, conclude that the trial
court's order failed to dispose of all of Appellant's causes of action against UFA. In re Burlington,
167 S.W.3d at 830.

 Moreover, based on the procedural history of the case, we interpret the court's order as
merely granting UFA's plea to the jurisdiction. As such, it disposed of Cantu's case against UFA,
not against DARS. Indeed, the record reflects that UFA and DARS were, at all times, represented
by separate counsel. While it seemingly waived service when it appeared at the hearing, DARS did
not join in UFA's plea to the jurisdiction but rather informed the court at the hearing that it was there
to represent its own interests and that it would be filing its own plea to the jurisdiction. DARS never
filed a plea to the jurisdiction. The trial court could not grant relief to DARS without a request. 
After the trial court granted UFA's plea to the jurisdiction, it did not sever, dismiss, or non-suit any
of Cantu's claims against DARS. Thus, we must conclude that the trial court's order granting UFA's
plea to the jurisdiction did not dispose of all parties.

 Because the trial court's order failed to dispose of all parties and all causes of action, it is
interlocutory. We next consider whether the interlocutory order is appealable and conclude that it
is not. Anglin, 842 S.W.2d at 272; see also Hervey, 975 S.W.2d at 24. As UFA is not a
governmental unit, we do not find that any of the statutorily-permitted exceptions in Section 51.014
would permit Cantu's appeal of the trial court's interlocutory order in this case. Tex. Civ. Prac. &
Rem. Code Ann. § 51.014(a)(8) (Vernon 2008), § 101.001(3) (Vernon 2005). Accordingly, finding
that the appeal is interlocutory, we dismiss the same for want of jurisdiction. Tex. Civ. Prac. &
Rem. Code Ann. §§ 51.012 & 51.014 (Vernon 2008); Lehmann, 39 S.W.3d at 195; El Paso County,
290 S.W.3d at 898; Nikolouzos, 162 S.W.3d at 681.

CONCLUSION

 The appeal is dismissed.

 

 GUADALUPE RIVERA, Justice

November 3, 2010


Before McClure, J., Rivera, J., and Antcliff, Judge

Antcliff, Judge, sitting by assignment

1. Section 15.014 states, "An action for mandamus against the head of a department of the state government
shall be brought in Travis County." Tex. Civ. Prac. & Rem. Code Ann. § 15.014 (Vernon 2002).
2. DARS participated in the hearing telephonically.
3. While this case was addressed under former Rule 38(a) of the Texas Rules of Civil Procedure, it provides
a useful analogy for our purposes.